UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FARRAH ELIZABETH WILLIS,             17-CV-01332-MJR
                                                                DECISION AND ORDER
           Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

           Defendant.
_____

       Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 7).

       Plaintiff Farrah Elizabeth Willis ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is granted, defendant's motion (Dkt. No. 16) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

       Plaintiff filed an application for SSI in March of 2014 alleging disability since October 18, 2011 due to spinal cord damage with four broken vertebras, neuropathy or femoral nerve, post-traumatic stress disorder ("PTSD"), anxiety, and misophonia.[2] (*See*

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] Misophonia is a disorder in which certain sounds trigger emotional or physiological responses. *See* https://www.webmd.com/mental-health/what-is-misophonia#1

Tr. 127-28).[3]  Plaintiff's disability benefits application was initially denied on June 27, 2014.  (Tr. 71).  Plaintiff sought review of the determination, and a video hearing was held before Administrative Law Judge ("ALJ") Gregory Hamel on August 8, 2016.  (Tr. 37-62).  Plaintiff, who was represented by an attorney, appeared and testified from West Seneca, New York and ALJ Hamel presided from Alexandria, Virginia.  (*Id.*).  Vocational Expert ("VE") Alissa Smith also appeared and testified at the hearing by telephone.  (*Id.*).  On August 25, 2016, ALJ Hamel issued a decision that plaintiff was not disabled under the Act.  (Tr. 21-32).  Plaintiff timely sought review of the decision by the Appeals Council.  (Tr. 1-6).  Plaintiff's request for review of the decision was denied by the Appeals Council on October 23, 2017.  (*Id.*).  The ALJ's August 25, 2016 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on April 9, 1977, plaintiff was thirty-nine years old at the time of the hearing.  (Tr. 127, 161).  She has a high school education and reported prior work experience as a debt collector, office worker, receptionist, and sales associate.  (Tr. 166).

## **DISCUSSION**

I.     *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic

---

[3] References to "Tr." are to the administrative record in this case.

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

3

not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is

4

not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not

5

disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of March 14, 2014.[4] (Tr. 23). At step two, the ALJ found that plaintiff has severe impairments consisting of lumbar degenerative disc disease with radiculopathy and fibromyalgia.[5] (Tr. 24-25). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 25-26). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[6] but can only occasionally climb stairs, balance, stoop, kneel, crouch and crawl; she cannot climb ladders or similar devices; and cannot work in hazardous environments for example heights or machinery.

---

[4] The ALJ noted that while plaintiff worked after the application date, this work activity did not rise to the level of substantial gainful activity. (Tr. 23).
[5] Also at step two, the ALJ considered plaintiff's medically determinable impairments of bipolar disorder, PTSD and anxiety and found that they are non-severe. (Tr. 24). Specifically, the ALJ concluded that they do not cause more than minimal limitations in plaintiff's ability to perform basic work activities. (*Id.* at 24-25).
[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *See* 20 CFR §416.967(b).

6

(Tr. 26-30).

Proceeding to step four, the ALJ concluded, based upon the testimony of VE Smith, that plaintiff is capable of her past relevant work as a collections clerk or a general office clerk. (Tr. 30-31). The ALJ made the alternative finding, under step five, that there are other jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 31-32). Accordingly, the ALJ found that plaintiff has not been under a disability within the meaning of the Act since March 14, 2014, the date the application was filed. (*Id.* at 32).

IV.     *Plaintiff's Challenges*

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not properly evaluate the opinions of her treating physicians. (*See* Dkt. No. 11-1 (Plaintiff's Memo of Law)). Specifically, she contends that the ALJ failed to provide good reasons for discounting the opinions of Dr. Honbiao Liu and Dr. Joseph Fasanello. For the reasons that follow, the Court finds that the ALJ properly applied the treating physician rule and gave good reasons as to why he did not credit the opinions of Dr. Liu and Dr. Fasanello.

Plaintiff stopped working consistently after injuring her back on October 11, 2011. (Tr. 42-43). Plaintiff indicates that while she worked some temporary jobs after the injury, she eventually stopped working altogether due to pain as well as difficulty sitting and standing. (*Id.*). Plaintiff further testified that she cannot work because of pain associated with her degenerative disc disease and fibromyalgia, which she described as "excruciating" and "horrifying." (Tr. 49-50). On May 20, 2014, Dr. Liu, plaintiff's former primary care physician, completed a medical source statement for the Social Security

7

Administration on her behalf. (Tr. 214-18). Therein, Dr. Liu stated that he treated plaintiff monthly beginning on September 5, 2012. (Tr. 214). He diagnosed her with closed fracture of lumbar spine with spinal cord injury, hyperlipidemia, anxiety, difficulty walking and insomnia. (*Id.*). Her symptoms included mid-lower back pain, symptoms of anxiety, mild difficulty with walking long distances and difficulty sleeping. (*Id.*). Dr. Liu opined that plaintiff could occasionally lift and carry no more than 10 pounds, stand and/or walk up to 2 hours per workday, and sit for less than 6 hours per workday. (Tr. 271). Dr. Liu further opined that plaintiff had a limited range of motion in her lower to mid lumbar as well as postural and manipulative limitations. (Tr. 217). In rendering the RFC, the ALJ afforded very little weight to most of Dr. Liu's opinions.

The treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Social Security Regulations require the Commissioner to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32; *quoting* 20 C.F.R. §404.1527(c)(2). Indeed, the reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, 6:15-cv-0643, 2016 WL 3514126, *6 (W.D.N.Y. June 28, 2016); *accord Blake v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (i) the frequency of examination and the length,

8

nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." 20 C.F.R. §404.1527(c)(2). "When other substantial evidence in the record conflicts with the treating physician's opinion…that opinion will not be deemed controlling…[a]nd the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *accord* 20 C.F.R. §404.1527(c)(4).

In affording very limited weight to most of Dr. Liu's opinions, the ALJ considered the factors outlined in the Social Security Regulations. Indeed, the ALJ provided specific and good reasons for this determination. The ALJ noted that Dr. Liu is a primary care physician who regularly treated plaintiff for back pain and other conditions for several years during the relevant period. (Tr. 28). However, the ALJ explained that Dr. Liu's opinions as to plaintiff's limitations are inconsistent in that the severity of the limitations set forth in his medical source statement are not reflected in his treatment notes. (Tr. 28-29). Specifically, in November of 2013, Dr. Liu indicated that plaintiff had no tenderness in her back and full range of motion in her extremities. (Tr. 246). In October of 2014, Dr. Liu reported that plaintiff had some tenderness in her back and limited range of motion in her shoulder but was able to walk normally on her heels and toes and had full range of motion in her extremities. (Tr. 275). In November of 2014, Dr. Liu reported that plaintiff had full range of motion in her extremities, was able to do a full squat and could lift her shoulders 150 degrees. (Tr. 277). While Dr. Liu opined that plaintiff was limited in her ability to sit and stand, the ALJ could find no evidence in Dr. Liu's treatment notes that

9

plaintiff was unable to sit or required help getting up from her seat. (Tr. 29). *See Michels v. Astrue*, 297 Fed. Appx. 74, 75-76 (2d Cir. 2008) (a physician's opinions are given less weight when those opinions are internally inconsistent).

The ALJ further explained, in accordance with the Social Security Regulations, how Dr. Liu's opinions were inconsistent with other medical evidence in the record as well as the record as a whole. (Tr. 28-29). In March of 2015, Dr. Liu found that plaintiff exhibited moderate difficulty walking on her heels and toes. (Tr. 293). However, in 2016, Dr. Fasanello opined that plaintiff had a normal gait and had a full range of motion in her upper and lower extremities. (Tr. 425). As noted by the ALJ, plaintiff's conditions were treated conservatively with medication only and none of plaintiff's treating doctors recommended surgery. (Tr. 29). Indeed, even though plaintiff complained of the severity of her pain, she refused the injections offered by another treating physician to alleviate her back pain. (Tr. 29, 226-28). Instead, she only wanted to be prescribed oxycodone. (*Id.*). As noted by the ALJ, the record reflects that some treating doctors suggested that plaintiff might be a "med-seeker." (Tr. 29). Further, plaintiff's most recent MRI's and other imaging revealed only mild or minimal deficits in her lumbar spine or thoracic spine. (Tr. 228, 325-27). In January of 2016, plaintiff underwent a full body scan as a result of her complaints of chronic pain. (Tr. 30, 439-40). The full body scan was normal and showed no evidence of abnormalities. (*Id.*). In sum, the ALJ provided ample, specific reasons for his determination that Dr. Liu's opinions that plaintiff was incapable of working eight hours and had significant manipulative limitations was not well supported. Thus, the ALJ did not violate the treating physician rule when he afforded very limited weight to Dr. Liu's opinions. *See Micheli v. Astrue*, 501 F. App'x 26, 28-29 (2d Cir. 2012) (holding that it was

not error for the ALJ to decline to afford controlling weight to a treating physician when the opinion was internally inconsistent as well as inconsistent with other substantial evidence in the record).

Dr. Fasanello of Highgate Medical Group treated plaintiff in 2016.[7] (Tr. 467-71). He diagnosed plaintiff with fibromyalgia, arthritis, and degenerative disc disease. (*Id.*). He noted that plaintiff's treatment included Oxycodone-acetaminophen and Xanax. (Tr. 467). Dr. Fasanello completed a physical residual capacity questionnaire for plaintiff on July 21, 2016. (Tr. 467-71). Therein, he opined that her pain and other symptoms would constantly interfere with her attention and concentration to perform even simple tasks, and that plaintiff was incapable of even "low stress" jobs because of her chronic pain. (Tr. 468). Dr. Fasanello found that plaintiff could walk 2 to 3 blocks, sit for 10 to 15 minutes, stand for 5 to 10 minutes, sit for a total of less than 2 hours in an 8-hour workday and stand/walk for less than a total of 2 hours in an 8-hour work day. (Tr. 468-69). He noted that she must use a cane or assistive device when standing or walking. (*Id.*). He opined that plaintiff needed a job that permitted her to shift from sitting, standing or walking at will and that she would need 10 or 15-minute long unscheduled breaks every 15 to 20 minutes of an 8-hour workday. (Tr. 469). Dr. Fasanello also opined that plaintiff could never lift 10 pounds, rarely look down or turn her head right or left, and only occasionally look up or hold her head in a static position. (Tr. 470). He found that plaintiff could never twist, bend, climb ladders and could only occasionally crouch, squat or climb stairs. (*Id.*). He

---

[7] Defendant contends that Dr. Fasanello was not a treating physician because plaintiff only treated with Dr. Fasanello on two occasions and with Dr. Fasanello's nurse practitioner on one occasion. (*See* Dkt. No. 16-1 (Defendant's Memo of Law)) . The Court declines to reach this argument because, for the reasons stated *infra*, even if Dr. Fasanello is considered a treating physician, the ALJ provided sufficient reasons to afford little weight to his opinions.

indicated that she could grasp, turn, and twist objects with her right hand for 33% of the workday and with her left hand for 30% of the workday and that she could reach with her right or left arm for 5 to 10% of the workday. (Tr. 470). Dr. Fasanello opined that plaintiff would likely be absent from work more than 4 days per month. (Tr. 470). The ALJ afforded very little weight to Dr. Fasanello's opinions of plaintiff's functional capacity. (Tr. 29).

The Court finds, contrary to plaintiff's contentions, that the ALJ provided good reasons for his decision to discount Dr. Fasanello's opinions according to the factors set forth in the Social Security Regulations. The ALJ acknowledged that plaintiff treated with Dr. Fasanello on multiple conditions in 2016. (Tr. 28). However, the ALJ then concluded, with ample support from the record, that Dr. Fasanello's opinions were extreme and seemed "exaggerated in comparison with his own treatment notes and the medical evidence in the record." (Tr. 29). Indeed, as explained above and noted by the ALJ in his decision, MRI's of plaintiff's spine revealed only mild deficits. Her physical examinations, including those by Dr. Fasanello, also revealed only mild or minimal issues with regard to her back and range of motion. (Tr. 445, 451-52, 455, 461). Her most recent bone scan was normal. She treated only with medication and refused injections recommended by a treating doctor to alleviate back pain. It was recommended that she treat with a pain management specialist, but she waited a year to see one. (Tr. 28, 226). Further, while Dr. Fasanello opined that plaintiff was severely limited in her ability to sit, stand or walk and needed a cane or other assistive device, the ALJ noted that none of plaintiff's treatment records indicate that she was ever prescribed a cane, wheelchair, or other assistive device by any treating doctor. (Tr. 29). Moreover, during examinations in

February of 2016, Dr. Fasanello noted that plaintiff walked with a normal gait and had full range of motion in her upper and lower extremities. (Tr. 445, 451-52). The ALJ reasoned that while plaintiff appeared at the hearing in a wheelchair, she testified that she has only used it "sporadically" since 2011. (Tr. 30). Further, there are no notes in plaintiff's medical records indicating that she ever appeared for treatment in a wheelchair. (*Id.*). Thus, the Court finds that the ALJ gave ample, specific and good reasons for giving limited weight to Dr. Fasanello's opinions and that, in doing so, the ALJ did not violate the treating physician rule.

Plaintiff next argues that the RFC is not supported by substantial evidence because, after rejecting the opinions of both treating physicians, the ALJ relied solely on his own lay interpretation of the medical evidence to support his RFC determination. (*See* Dkt. No. 11-1 (Plaintiff's Memo of Law)). For the reasons stated below, the Court agrees that there was insufficient medical evidence in the record for the ALJ to adequately assess plaintiff's RFC and that remand for further development of the record is necessary.

As explained above, the ALJ's decision to afford very little weight to the opinions of treating physicians Dr. Liu and Dr. Fasanello was supported by the record and did not violate the treating physician rule. However, after rejecting these opinions, the ALJ was left with no medical opinion in the record as to plaintiff's functional limitations or ability to work. Generally, when assessing a plaintiff's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp. 2d. 329, 339 (W.D.N.Y. 2008). *See e.g., Urban v. Berryhill*, 16-CV-76, 2017 U.S. Dist. LEXIS 53774, *7 (W.D.N.Y. Apr. 7, 2017) ("An ALJ is not qualified to assess a claimant's

RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."); *Felder v. Astrue*, 10-CV-5747, 2012 U.S. Dist. LEXIS 129384, *36 (E.D.N.Y. Sept. 11, 2012) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."). However, when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, *21 (W.D.N.Y. Mar. 6, 2015).

The Court finds that this is not a case where the medical evidence shows only minor impairments and the ALJ could render a common-sense judgment as to plaintiff's physical capabilities. The ALJ noted that plaintiff's use of medication suggests that she has significant medical problems and that the record demonstrates that plaintiff has a history of back pain that causes some level of functional limitation. (Tr. 27-28). The ALJ further noted that while the medical evidence fails to support plaintiff's contention that she is incapable of working, "she has severe impairments." (Tr. 29). The ALJ concluded that plaintiff was capable of, at most, light work with some additional restrictions. Thus, the ALJ found that plaintiff had physical limitations that could substantially impact her ability to work, but rejected the only two medical opinions in the record that specifically assessed her functional capacity. While the ALJ was entitled to discount those medical opinions, he was not then permitted to make his own determination as to plaintiff's physical capabilities. *See Stein v. Colvin*, 15-CV-6753, 2016 WL 7334760, *4 (W.D.N.Y. Dec. 19,

2016) ("Regardless of whether it was proper for the ALJ to discount this opinion, the ALJ's rejection of the only medical opinion in the record created an evidentiary gap requiring remand."); *House v. Astrue*, 5:11-CV-915, 2013 WL 422058, *4 (N.D.N.Y. Feb. 1, 2013) (ALJ's proper rejection of the treating physician opinion nonetheless necessitated remand because the absence of any other medical assessment supporting the ALJ's finding that plaintiff could perform sedentary work created an evidentiary gap requiring further administrative proceedings); *Hopper v. Berryhill*, 16-CV-6573, 2017 WL 5712307, *3 (W.D.N.Y. Nov. 28, 2017) ("It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this highly specific determination" after rejecting the only medical opinion in the record as to plaintiff's mental ability to perform work related functions).

Likewise here, the rejection of the only two medical opinions in the record created an evidentiary gap. Because there is no medical source opinion supporting the ALJ's finding that plaintiff can perform light work with some additional restrictions, the Court concludes that the ALJ's RFC determination is without substantial support in the record and that remand for further administrative proceedings is appropriate. On remand, the ALJ should obtain a physical RFC assessment or medical source statement from an acceptable medical source concerning plaintiff's physical capabilities.

## **CONCLUSION**

For the foregoing reasons, plaintiff Farrah Elizabeth Willis's motion for judgment on the pleadings (Dkt. No. 11) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 16) is denied, and the matter is remanded

to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   May 14, 2019
         Buffalo, New York

                                        */s/ Michael J. Roemer*
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge